COURT OF APPEALS
DECISION
DATED AND FILED

March 22, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP877**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022GN58

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF M.A.S:

WAUKESHA COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

M.A.S.,

RESPONDENT,

R.B.,

OTHER PARTY-APPELLANT.

APPEAL from an order of the circuit court for Waukesha County: MICHAEL P. MAXWELL, Judge. *Dismissed*.

¶1      NEUBAUER, J.[1]  R.B., referred to herein by the pseudonym Rose, appeals from an order granting a petition for protective placement over her mother, M.A.S., referred to herein as Mary.  Rose argues that her mother's due process rights were violated at the hearing on the petition and that the Waukesha County Department of Health and Human Services did not present evidence sufficient to show that her mother was in need of protective placement.  This court cannot reach the merits of these arguments, however, because Rose lacks standing to appeal the order.  WISCONSIN STAT. § 55.20 provides that "[a]n appeal may be taken to the court of appeals from a final judgment or final order" under WIS. STAT. ch. 55 "by the subject of the petition or the individual's guardian, by any petitioner, or by the representative of the public."  Rose is not one of the persons authorized by the statute to bring an appeal, and her status as an "[i]nterested person" in this proceeding does not permit her to appeal the order.  *See* WIS. STAT. § 55.01(4).  Additionally, Rose is not otherwise "aggrieved" sufficient to confer standing.  Thus, her appeal must be dismissed.

## BACKGROUND

¶2      In March 2022, the County filed a petition for protective placement of Mary under WIS. STAT. ch. 55 and a petition seeking the appointment of a guardian under WIS. STAT. ch. 54.  The County alleged that Mary had been diagnosed with a "Major Neurocognitive disorder … with behavioral disturbances," had been "living in a car or staying at a motel" for the last three years despite owning two homes, "ha[d] not taken care of herself physically or

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

addressed her multiple medical conditions," and was "at significant risk of harm and requires [twenty-four-]hour care and supervision for her safety." Rose, one of Mary's three daughters, did not file an objection to either petition.

¶3    Counsel was appointed to represent Mary, and after an initial hearing, a court commissioner appointed a nonfamily member to be her temporary guardian. The circuit court held a final hearing on the petitions on April 7, 2022. Mary's guardian waived her appearance. Rose and Mary's two other daughters testified at the hearing. When asked to confirm that she did not oppose a guardianship for her mother, Rose replied, "I would like for my sister, my two sisters to [be coguardians]." Rose was not asked any questions about the issue of protective placement.

¶4    At the conclusion of the hearing, the court found that the County had met its burden of showing that protective placement and the appointment of a permanent guardian were appropriate. The court subsequently entered two orders, one appointing separate guardians of Mary's person and estate (neither of which were Rose's sisters) and the other granting protective placement over Mary.

¶5    After entry of these orders, an attorney filed an appearance for Rose and a notice of appeal "from the *Order on Petition for Protective Placement or Protective Services*." Mary, who was represented by counsel and has a guardian, has not appealed from either order.

¶6    The County filed a motion to dismiss Rose's appeal, arguing that she lacks standing to appeal the protective placement order under WIS. STAT. § 55.20 and that she did not timely file a notice of intent to pursue postdisposition relief as required by WIS. STAT. RULE 809.30(2)(b). This court addressed the County's motion in an order dated October 7, 2022. As a preliminary matter, this court

concluded that Rose's appeal is limited to the protective placement order because her notice of appeal "does not refer, in any way, to the [WIS. STAT.] ch. 54 guardianship order." This court then denied the County's motion but directed the parties to brief several issues related to Rose's ability to bring this appeal.

¶7 First, this court ordered the parties to address whether WIS. STAT. § 55.20 bars Rose's appeal. More specifically, the parties were directed to address whether the word "may" in § 55.20 suggests that persons other than those listed in the statute can appeal a protective placement order. In addition, this court directed the parties to address "the significance, if any, of the provisions of … § 55.20 and the 'interested person' definition in WIS. STAT. § 55.01(4)(a)." Finally, the parties were ordered to address whether, "[s]etting aside … § 55.20, [Rose is] aggrieved such that she has standing to appeal the … protective placement order."[2] Having received the parties' briefs, this court now concludes that Rose is not authorized to appeal under § 55.20 and is not otherwise "aggrieved" to confer standing.

## DISCUSSION

### I. Rose Is Not Authorized to Appeal the Order Under WIS. STAT. § 55.20.

¶8 WISCONSIN STAT. § 55.20 addresses appeals of final orders and judgments in protective placement and protective services proceedings. Whether Rose has standing to maintain this appeal turns on the meaning of § 55.20.

---

[2] The order also directed the parties to address whether Rose was "required to comply with WIS. STAT. RULE 809.30." Because this court concludes that Rose lacks standing to appeal the protective placement order, we need not address this issue. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (when one issue is dispositive of an appeal, this court need not reach other issues).

Statutory interpretation is a legal issue that this court resolves de novo. ***Coston v. Joseph P.***, 222 Wis. 2d 1, 10, 586 N.W.2d 52 (Ct. App. 1998).

¶9 WISCONSIN STAT. § 55.20 reads as follows:

> An appeal may be taken to the court of appeals from a final judgment or final order under this chapter within the time period specified in [WIS. STAT. §] 808.04(3) and in accordance with [WIS. STAT. RULE] 809.30 by the subject of the petition or the individual's guardian, by any petitioner, or by the representative of the public.

Section 55.20 went into effect in April 2006; before then, the text of the statute (with minor differences not relevant here) was located in WIS. STAT. § 55.06(18) (2003-04). *See* 2005 Wis. Act 264, § 155.

¶10 When interpreting statutory language, our aim "is to determine what the statute means so that it may be given its full, proper, and intended effect." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. To do so, this court gives the language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Id.***, ¶45. This court interprets statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.***, ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." ***Id.*** (citation omitted).

¶11 WISCONSIN STAT. § 55.20 identifies four persons who may appeal a protective placement order: (1) "the subject of the petition"; (2) "the individual's guardian"; (3) "any petitioner"; or (4) "the representative of the public." ***Id.*** Rose

does not (and cannot) argue that she is one of these persons. Instead, she contends that the word "may" in the statute suggests that persons other than those identified in the statute can bring an appeal and that she, as an "[i]nterested person" under WIS. STAT. § 55.01(4), is such a person.[3]

¶12 This court disagrees. As in other statutes, the word "may" is used in WIS. STAT. § 55.20 to confer opportunity or permission to take an action. *See Heritage Farms, Inc. v. Markel Ins. Co.*, 2012 WI 26, ¶32, 339 Wis. 2d 125, 810 N.W.2d 465 ("The word 'may' is ordinarily used to grant permission or to indicate possibility."). In § 55.20, the verb phrase "may be taken" conveys permission (or an opportunity) to appeal a final judgment or order in a chapter 55 proceeding. And though the statute is written in the passive voice, the legislature did not leave the actors who are given that opportunity undetermined. To the contrary, in the latter portion of the statute, it specifically identified the four persons who can bring an appeal. Doing so is evidence of the legislature's intent not to extend the appeal right to others. *See State v. Dylan S.*, 2012 WI App 25, ¶26, 339 Wis. 2d 442, 813 N.W.2d 229 ("Where a statute lists items included in its purview, omission of an item is evidence that the legislature intended to exclude it."). This court sees nothing in the text of the statute itself to support Rose's contention that the legislature's use of the word "may" signifies its intent to extend the statutory right to appeal to persons other than those identified in the statute.

¶13 This court must also interpret WIS. STAT. § 55.20 in relation to "surrounding or closely-related statutes." *See Kalal*, 271 Wis. 2d 633, ¶46. The

---

[3] The County does not dispute that Rose, an adult child of Mary, is an "[i]nterested person" under WIS. STAT. § 55.01(4). This court agrees. *See* § 55.01(4)(a) ("'Interested person' means … [a]n adult relative or friend of an individual sought to be protected under this chapter.").

County cites several other provisions in WIS. STAT. ch. 55 in which the word "may" is used in the permissive sense to empower specifically identified actors to take some action. *See, e.g.*, WIS. STAT. § 55.15(2) (identifying persons who "may transfer an individual under a protective placement order"); WIS. STAT. § 55.16(2) (identifying persons who "may file a petition … for modification of an order for protective services or protective placement"); WIS. STAT. § 55.17(1) (identifying persons who "may file a petition at any time for termination of an order for protective placement or protective services"). Although these statutes are written in the active (as opposed to passive) voice, they reflect a common usage of "may" throughout chapter 55 to confer permission to take a particular action on the persons listed in the statute.

## II. Rose's Status as an "Interested [P]erson" Does Not Give Her the Right to Appeal.

¶14 Rose relies on her status as an "[i]nterested person" under WIS. STAT. § 55.01(4), but that status undercuts her argument for standing more than it helps. Chapter 55 specifically empowers interested persons to take specific actions in protective placement proceedings. In particular, an interested person may:

> (1) "request[] protective services on behalf of an individual in need of services," WIS. STAT. § 55.05(2)(b), or "file a petition for appointment of a guardian and for protective services or protective placement for an individual," WIS. STAT. § 55.075(1);
>
> (2) request that the hearing on a protective placement petition be moved to a different location so that the individual who is the subject of the petition can attend, WIS. STAT. § 55.10(2);
>
> (3) "file a petition … objecting to a proposed transfer or to an emergency transfer" of an individual subject to a protective placement order, WIS. STAT. § 55.15(6);

7

(4) "file a petition … for modification of an order for protective services or protective placement," WIS. STAT. § 55.16(2)(a); and

(5) "file a petition … for termination of an order for protective placement or protective services," WIS. STAT. § 55.17(1).

In each of these provisions, the legislature included the term "interested person" to signify that such a person may take the specified action. Notably, the legislature provided the opportunity for appeal of an adverse decision by those empowered to take such actions as a "petitioner" under WIS. STAT. § 55.20. In contrast, the legislature did not include an interested person among those in § 55.20 who may appeal a protective placement order, though it could have done so.

¶15 When these statutes are viewed together, it becomes apparent that the legislature has taken care to identify the actors who can take certain actions in relation to proceedings under WIS. STAT. ch. 55. Given the express inclusion of "interested person" in the provisions listed above, the absence of that term in WIS. STAT. § 55.20 is significant evidence that the legislature did not intend an interested person to be able to appeal a chapter 55 order.

¶16 This court's decision in **Knight v. Milwaukee County**, 2001 WI App 147, 246 Wis. 2d 691, 633 N.W.2d 222, *rev'd on other grounds*, 2002 WI 27, 251 Wis. 2d 10, 640 N.W.2d 773 (**Knight I**), provides additional guidance that merely being an "interested person" does not confer standing to appeal a protective placement order. In that case, two persons who served as a ward's "power-of-attorney agents" and described themselves as "interested persons" sought to appeal orders appointing a guardian for the ward and directing her protective placement. **Knight I**, 246 Wis. 2d 691, ¶1. This court held that the agents lacked standing to appeal the orders under a probate statute, WIS. STAT. § 879.27. **Knight I**, 246

8

Wis. 2d 691, ¶1. Our supreme court reversed after concluding that the agents did have standing under that statute. *Knight v. Milwaukee County*, 2002 WI 27, ¶1, 251 Wis. 2d 10, 640 N.W.2d 773 (*Knight II*). But this court in *Knight I* also examined whether the agents had standing to appeal under WIS. STAT. § 55.06(18) (1999-2000), the predecessor to WIS. STAT. § 55.20. On that issue, this court concluded that the agents did not have standing because they had not filed the petition seeking protective placement over the ward and thus were not "petitioner[s]" under the statute. *Knight I*, 246 Wis. 2d 691, ¶22. Notably, this court did not conclude that the agents could bring the appeal merely because they were interested persons; they had to be one of the persons authorized in § 55.06(18) (1999-2000). *See Knight I*, 246 Wis. 2d 691, ¶22. The Wisconsin Supreme Court did not address this conclusion in its decision but instead expressly limited its holding to § 879.27. *Knight II*, 251 Wis. 2d 10, ¶19 n.5. Accordingly, this court's analysis of § 55.06(18) (1999-2000) in *Knight I* retains precedential value. *See State v. Schmidt*, 2016 WI App 45, ¶48 n.11, 370 Wis. 2d 139, 884 N.W.2d 510 ("[T]he general rule is that holdings of [the court of appeals] not specifically reversed on direct appeal to the supreme court retain precedential value.").

¶17 Rose's argument regarding her "[i]nterested person" status is grounded in two cases decided by this court, *Coston*, 222 Wis. 2d 1, and *Carla S. v. Frank B.*, 2001 WI App 97, 242 Wis. 2d 605, 626 N.W.2d 330.[4] In *Coston*,

---

[4] Rose cites and extensively discusses *Carla S. v. Frank B.*, 2001 WI App 97, 242 Wis. 2d 605, 626 N.W.2d 330, for the first time in her reply brief, leaving the County without an opportunity to respond. For this reason, this court could decline to address the case. *See Techworks, LLC v. Wille*, 2009 WI App 101, ¶28, 318 Wis. 2d 488, 770 N.W.2d 727. However, for the sake of completeness, this court will address it.

two interested persons—the niece and sister of Joseph P.—appealed from orders appointing guardians for Joseph and ordering protective placement. *Coston*, 222 Wis. 2d at 4. The niece and sister argued that, as "[i]nterested person[s]" under a guardianship statute, WIS. STAT. § 880.01(6) (1995-96),[5] they had the right to participate at the circuit court hearing on the petitions and to object to the court's reliance on certain evidence. *Coston*, 222 Wis. 2d at 4, 6. They argued that the circuit court erred in not holding a full evidentiary hearing on the merits of the petitions. *Id.*

¶18 To address these arguments, this court examined the rights of interested persons in guardianship and protective placement proceedings. Specifically, this court identified certain rights conferred upon interested persons in the guardianship statutes but noted that "[n]o statute provides for interested persons to demand a trial, present evidence, or raise evidentiary objections in guardianship and protective placement hearings—whether contested or uncontested." *Id.* at 21.[6] Accordingly, this court concluded that no statute or case law "provides interested persons with unlimited rights to participate in the hearing." *Id.* at 12-13 & n.8. Though "the statutory provisions for an interested person's formal participation in guardianship and protective placement hearings are specific and limited," this court recognized that the circuit court retained

---

[5] WISCONSIN STAT. § 880.01(6) (1995-96) was subsequently repealed, and the definition of "[i]nterested person" was amended and relocated to WIS. STAT. § 54.01(17). *See* 2005 Wis. Act 387, §§ 100, 300.

[6] *See also* WIS. STAT. § 55.10(4)(c) (permitting only the individual who is the subject of a protective placement hearing, the individual's attorney, and the individual's guardian ad litem "to present and cross-examine witnesses" at a hearing on a petition for protective services or protective placement).

"discretion to allow interested persons to participate [in a hearing] to the extent it would deem appropriate." *Id.* at 21.

¶19    Three years later, in *Carla S.*, this court considered an appeal brought by the daughter of a ward who sought review of an order authorizing her father's guardian to terminate the father's life estate in his home. *Carla S.*, 242 Wis. 2d 605, ¶1.  The circuit court determined that the daughter had standing to contest the order because she was an "[i]nterested person" under WIS. STAT. § 880.01(6) (1997-98), which accorded that status to an "adult relative … of a person to be protected" under the guardianship statute.  Sec. 880.01(6) (1997-98); *Carla S.*, 242 Wis. 2d 605, ¶4.  The guardian challenged the daughter's standing to bring the appeal.  *Carla S.*, 242 Wis. 2d 605, ¶4.  In a split decision, this court concluded that the daughter had standing.  *Id.*, ¶10.

¶20    In reaching that conclusion, the majority reviewed some of the common law standards governing standing, including the "appellate requirement that the right to appeal is limited to persons 'aggrieved' by a final judgment or order." *Id.*, ¶6 (quoting *Ford Motor Credit Co. v. Mills*, 142 Wis. 2d 215, 217, 418 N.W.2d 14 (Ct. App. 1987)).  The majority then observed that "[i]t would be strange indeed if a person who has been recognized by the legislature as an 'interested person' and whose standing has been recognized by the trial court, would nonetheless lack standing to appeal the very determination for which he or she had standing in the trial court." *Carla S.*, 242 Wis. 2d 605, ¶6.

¶21    Finally, the majority explained that "interested persons have been judicially recognized as having standing in appellate courts." *Id.*  In support, it cited *Bryn v. Thompson*, 21 Wis. 2d 24, 123 N.W.2d 505 (1963), a guardianship case in which our supreme court stated that "*[i]n addition to a direct appeal of the*

11

*initial order*, any interested party at any time during the guardianship may petition for a rehearing seeking revocation of the guardian-ward status." *Carla S.*, 242 Wis. 2d 605, ¶7 (quoting *Bryn*, 21 Wis. 2d at 29). The *Carla S.* majority then cited this court's decision in *Coston*, which it said had "affirmed" the aforementioned statement in *Bryn*. *Carla S.*, 242 Wis. 2d 605, ¶7. Though nothing in *Coston* indicates that any party challenged the ability of the interested persons to appeal the guardianship and protective placement orders, the majority in *Carla S.* stated that this court "would have dismissed the appeal" in *Coston* if it had "concluded … that the [interested persons] lacked standing."[7] *Carla S.*, 242 Wis. 2d 605, ¶7.

¶22 None of these cases establishes Rose's right to appeal the protective placement order. The discussion in *Coston* focused on the rights of interested persons to participate in proceedings held in the circuit court. In that discussion, this court focused primarily on rights afforded to interested persons under the guardianship statutes, which were then codified in subchapter I of WIS. STAT. ch. 880 (1995-96). *See Coston*, 222 Wis. 2d at 11-13 & n.8, 20-22.[8] This court

---

[7] The dissenting judge in *Carla S.* noted that the standing of the interested persons in *Coston* "was apparently not challenged" and that the court in *Coston* did not specifically address the issue of standing. *Carla S.*, 242 Wis. 2d 605, ¶22 (Deininger, J., dissenting). The dissent concluded further that the daughter was not "aggrieved by the order authorizing her father's guardian to terminate the life lease" because she was not statutorily entitled to notice of, or to participation in, proceedings to terminate the life lease and because her arguments on appeal "relate[d] to alleged violations of [her father]'s rights and interests—not hers." *Id.*, ¶¶23-24.

[8] Notably, the legislature subsequently codified *Coston*'s holding, adding a provision to the guardianship statute which provides that "[a]n interested person may participate in the hearing on the petition at the court's discretion." WIS. STAT. § 54.44(5m); *see also* 2005 Wis. Act 264, § 207 (acknowledging in a legislative note that the text currently found in § 54.44(5m) was enacted to codify the holding in *Coston*). There was *no* modification of WIS. STAT. § 55.20 to recognize a right to appeal by an interested person. *See Strenke v. Hogner*, 2005 WI 25, ¶28, 279 Wis. 2d 52, 694 N.W.2d 296 ("The legislature is presumed to act with full knowledge of existing case law when it enacts a statute.").

did not cite any specific rights granted in the chapter governing protective services, WIS. STAT. ch. 55. Moreover, no party in *Coston* appears to have cited WIS. STAT. § 55.06(18) (1995-96), the predecessor to WIS. STAT. § 55.20, or even questioned the interested persons' standing to appeal the guardianship and protective placement orders. And because standing "is not a matter of jurisdiction, but of sound judicial policy" in Wisconsin, ***Friends of Black River Forest v. Kohler Co.***, 2022 WI 52, ¶17, 402 Wis. 2d 587, 977 N.W.2d 342 (citation omitted), this court did not need to raise the issue *sua sponte* before reaching the substantive issues raised by the parties. *See **Waushara County v. Graf***, 166 Wis. 2d 442, 451, 480 N.W.2d 16 (1992) (explaining that "appellate courts need not and ordinarily will not consider or decide issues which are not specifically raised on appeal").

¶23    ***Bryn*** and ***Carla S.*** also do not control the outcome here. Both of those decisions arose out of guardianship proceedings; neither involved WIS. STAT. ch. 55. Though the procedures that govern guardianship and protective placement proceedings are similar in some respects, *see, e.g.*, ***Racine County v. P.B.***, 2022 WI App 62, ¶¶12-13, 405 Wis. 2d 383, 983 N.W.2d 721, the guardianship statutes in effect when this court decided ***Carla S.*** (WIS. STAT. §§ 880.01-.39 (1997-98)) lacked a provision similar to WIS. STAT. § 55.20 that identified the persons who could appeal a guardianship order. No such provision has been added to the guardianship statute since ***Carla S.*** Thus, the language regarding the standing of interested persons to appeal in ***Bryn*** and ***Carla S.*** is best understood as applying only to guardianship proceedings and not to protective placement actions under chapter 55.

¶24    We further note that Wisconsin courts must also interpret statutory language "to avoid absurd or unreasonable results." ***Kalal***, 271 Wis. 2d 633, ¶46.

13

Rose fails to explain why a conclusion that she may not appeal the protective placement order under WIS. STAT. § 55.20 would be absurd or unreasonable. The legislature could reasonably decide to extend to an "interested person" the right to take certain actions in WIS. STAT. ch. 55 proceedings but not to appeal a chapter 55 order unless the interested person is a petitioner. As noted above, the legislature provided adult relatives and even friends the opportunity to petition the circuit court to initiate a protective placement proceeding as well as to modify or terminate a protective placement order. Thus, an adult relative or friend has other avenues to pursue, should those options be appropriate. Moreover, our supreme court has affirmed "that the constitution requires that individuals who are protectively placed under [chapter] 55 receive periodic, automatic judicial review of their placement[s]." ***Knight II***, 251 Wis. 2d 10, ¶47; *see also* WIS. STAT. § 55.18; ***State ex rel. Watts v. Combined Cmty. Servs. Bd.***, 122 Wis. 2d 65, 77-78, 362 N.W.2d 104 (1985).

¶25 The legislature's decision to allow an adult relative or friend to initiate proceedings in the circuit court and to engage, at the discretion of the circuit court, in the hearing makes sense because such proceedings also provide for the involvement of the subject and his or her advocacy counsel, who represents the subject. *See* WIS. STAT. § 55.10(4)(a). Guardians are obligated to advocate for the subject's bests interests. *See* WIS. STAT. §§ 54.18(2)(b), 55.10(4)(b). In other words, multiple participants provide input at the circuit court level.

¶26 By contrast, an adult relative or friend has no duty to advocate for the best interests of the individual. Where, as here, an appeal is not taken by the subject or those appointed by the court to advocate for that individual's bests interests, the adult relative's or friend's interests may not be aligned with those of

14

the individual. As the County notes, allowing an interested person to appeal a protective placement order which the subject chooses not to contest would expose that individual to further litigation and possible changes in placement conditions the individual did not seek and does not want. As such, it is neither absurd nor unreasonable that the legislature has not allowed interested persons to appeal protective placement orders, particularly when it allows them to petition for modification or termination and to participate in circuit court proceedings in which others who are obligated to act in the subject's best interests are involved.

¶27 For these reasons, this court concludes that Rose's status as an "[i]nterested person" under WIS. STAT. § 55.01(4) does not give her the right to appeal the protective placement order.

### III. Rose Does Not Have Standing to Appeal Because She Is Not Aggrieved by the Circuit Court's Order.

¶28 Lastly, even if this court was to set aside WIS. STAT. § 55.20, Rose would not have standing to appeal the circuit court's order directing protective placement for Mary under the common law rules that govern standing.

¶29 "The rule is that a person may not appeal from a judgment or order unless aggrieved by it." *Kiser v. Jungbacker*, 2008 WI App 88, ¶11, 312 Wis. 2d 621, 754 N.W.2d 180. "In order to be aggrieved by a judgment or order, that judgment or order must operate on a person's rights of property or bear directly on some other interest." *Knight II*, 251 Wis. 2d 10, ¶16. "A person is aggrieved if the judgment or order bears 'directly and injuriously' upon his or her interests and affects the person 'in some appreciable manner.'" *Kiser*, 312 Wis. 2d 621, ¶11 (quoting *Weina v. Atlantic Mut. Ins. Co.*, 177 Wis. 2d 341, 345, 501 N.W.2d 465 (Ct. App. 1993)). "The word 'aggrieved' refers to a substantial grievance, a denial

of some personal or property right or the imposition of a burden or obligation." ***Town of Greenfield v. Joint Cnty. Sch. Comm.***, 271 Wis. 442, 447-48, 73 N.W.2d 580 (1955).

¶30 Rose's argument on this point is not well developed. She argues that she was aggrieved by the protective placement order because the circuit court "allowed her to participate and state her objection to having her mother … placed in a locked facility." That argument is not sufficient to establish standing to appeal for multiple reasons. First, Rose's contention that she objected to her mother's placement in a locked facility is not factually supported because she cites to her sister's testimony at the hearing, not her own. Rose did not object to a guardianship in her testimony—she merely wanted her sisters to be appointed coguardians.

¶31 In addition, Rose was not asked questions about protective placement during her testimony, but even if she had been and had opposed protective placement, that would not be sufficient to establish that she is "aggrieved" by the protective placement order. *See **Kiser***, 312 Wis. 2d 621, ¶11. Simply put, Rose has not explained how the protective placement order "directly and injuriously" bears on any legally protected interest of hers. *See **id.*** (citation omitted). She has not identified any way in which the order infringes on or denies her personal or property rights or imposes any burden or obligation sufficient to render her "aggrieved." *See **Town of Greenfield***, 271 Wis. at 447-48. Though this court is to "liberally construe the law of standing," ***Koller v. Liberty Mut. Ins. Co.***, 190 Wis. 2d 263, 266, 526 N.W.2d 799 (Ct. App. 1994) (citation omitted), Rose's case for standing consists of mere disagreement with the court's decision, which is not enough. *See **L.P. v. B.G.***, 177 Wis. 2d 424, 427, 501 N.W.2d 908

16

(Ct. App. 1993) ("[A] strong desire to be heard by the court is not enough to establish standing.").

¶32    The lack of any legally cognizable injury specific to Rose is apparent in the merits arguments she raises.  She does not argue that the circuit court's order violates any of her rights or interests.  Instead, Rose contends that her *mother* "has a huge liberty interest at stake" and that the circuit court violated her *mother*'s due process rights by basing its decision in part on the testimony of a psychologist who had not personally examined her.  Rose also argues that the court erroneously exercised its discretion in finding that her *mother* was not capable of caring for herself and posed "a substantial risk of serious harm to herself or others."  These are *Mary*'s arguments to raise, not Rose's.  They allege injury to *Mary*'s right to not be deprived of liberty without due process, not Rose's.  They do not show that Rose is "aggrieved" by the protective placement order sufficient to confer standing to appeal it.

By the Court.—Appeal dismissed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.